# Avery *against* Seely.

It is the duty of the sheriff, who arrests a debtor within the county of which he is sheriff, upon a *testatum ca. sa.*, to commit the debtor to the jail of the same, and not to the jail of the county from the court of which the writ issued.

*Semble.* The sheriff in such case would be chargeable with an escape, if he were to commit the debtor to the jail of the latter county.

A debtor in such case, who wishes to obtain an order for his discharge, under the Insolvent Act of the 16th of June 1836, must apply for it to a judge or prothonotary of the common pleas of the county in which he has been arrested or is detained; and the condition of the bond thereby required to be given, ought to be, that he shall appear at the next term of the court of common pleas of *that* county, and then and there present his petition for the benefit of the insolvent laws of this commonwealth, &c.

*Semble.* Where in such case the county in which the debtor was arrested and is detained, is mentioned in the obligatory part of the bond, and the county from which the writ issued, is mentioned in a recital immediately preceding the condition, and the words of the condition are, " that if the said ——————— (the debtor)

[Avery v. Seely.]

shall appear at the next term of the court of common pleas of the *said county*, and then and there, &c." the words "said county" may be construed to mean the county mentioned in the obligatory part, in order to sustain the bond and render it available.

ERROR to the Common Pleas of *Erie* county.

This was an action of debt on an insolvent's bond, brought by Penderson Avery, the plaintiff in error, against Charles W. Seely and Samuel Hays, the defendants in error. The defendant, Seely, was arrested in Erie county, by the sheriff thereof, by virtue of a *testatum* writ of *capias ad satisfaciendum*, sued out of the Common Pleas of Luzerne county, at the suit of the plaintiff in this case; and, being thus under arrest in the custody of the sheriff, gave the bond in question, with Samuel Hays, the other defendant, as his surety. The condition of the bond, after reciting that Seely was arrested and in custody of the sheriff by virtue of an execution issued "by the prothonotary of the county of *Luzerne*, at the suit of Penderson Avery," stated, " that if the said Seely shall appear at the next term of the Court of Common Pleas of the *said* county, &c., or in default thereof, and if he fail in obtaining his discharge as an insolvent debtor, that he shall surrender himself to the jail of the *said* county," then, &c. In the bond itself *Erie* county was mentioned as the residence of both the obligors, and was the only county mentioned in it. At the next succeeding term of the Common Pleas of *Erie* county, Seely presented his petition for the benefit of the insolvent laws, upon which the court made an order for proceeding thereon, without having come to a final determination of the same when this action was commenced. Seely did not appear at the next Court of Common Pleas of Luzerne county, and present his petition to the same for relief under the insolvent laws.

The question in the court below was, whether Seely ought not to have appeared at and presented his petition to the Common Pleas of Luzerne county, during its next term; but having failed to do so, did his bond thereby become forfeited? The court below was of opinion that he was not bound to appear at and present his petition to the Common Pleas of Luzerne county, but at the Common Pleas of Erie county, as he had done; and accordingly rendered judgment for the defendants. The plaintiff alleged that the court erred in doing so; and that it should have rendered judgment in his favour.

*Galbreath* and *Riddle*, for plaintiff in error, argued that the bond was forfeited, because, by the express terms of the condition, Seely was to appear at the Common Pleas of Luzerne county during its next term, and present his petition for the benefit of the insolvent laws, &c.; but not having done this, his bond became forfeited, and the plaintiff consequently entitled to maintain this action upon it. Besides, the condition of the bond, in this respect,

[Avery v. Seely.]

is drawn in conformity to what the law would seem to require on the subject; for the Common Pleas of Luzerne county was certainly the court to which the sheriff was required to make return of his having arrested Seely; and he could not properly make return of the writ to any other court, as the writ issued from that court. The writ also required the sheriff to have the body of Seely before that court on the return day of the writ. 1 *Ashmead* 10.

*Babbit*, for the defendants in error, stated that the general practice or custom was, for the sheriff, when he arrested a defendant upon a *testatum capias ad satisfaciendum*, to commit him to the jail of his own county. But if it were not lawful for him to do so, then it would be an escape, and render him liable to the plaintiff named in the writ for the amount of the judgment mentioned in it. No instance, however, has ever occurred of an action instituted upon such ground; which goes to show, that the law is not as contended for by the plaintiff in error. And in the phrase " said county," which is used in the condition of the bond, the word " said" as used there does not necessarily refer to the county last mentioned before, but may be referred to " Erie county," mentioned in the obligatory part, if necessary, in order to make the whole proceeding regular and available.

The opinion of the Court was delivered by

KENNEDY, J.—Although it be true, that generally the command to the sheriff, in the writ of *capias ad satisfaciendum*, issued upon a judgment, is, that he take the body of the defendant, so that he have him before the Judges of the court whence the writ issued, yet this latter part of the mandate is never, in fact, complied with; nor is it requisite that it should be, as no further proceeding is to be had thereon against the defendant, nor action of the court upon the writ; for, by the execution of it, the plaintiff has obtained the effect of his suit. *Hoe's Case*, (5 Co. 90). And for this reason it may be, that such writ, when sued out upon a statute-merchant, simply requires the sheriff to take the body of the debtor, and cause him *to be kept safely in prison*, until he shall fully satisfy the debt; *Fitz. N. B.* 130: or as Dalton has it, until he hath *agreed for*, or fully satisfied the debt; *Dalt. Sheriff* 120. And this, in short, would seem to be the full extent of the duty of the sheriff upon any writ of *capias ad satisfaciendum*, after having arrested the party named in it. And it is all that the plaintiff in the writ or the court can require of him; for the body of the debtor is not taken by virtue thereof in satisfaction of the debt, but merely as a pledge for the payment of it. *Blumfield's Case*, (5 Co. 87); *Dalt. Sheriff* 119. In all cases, however, the sheriff is required to make return of the writ, and what he has done on it, to the Judges of the court in this State whence it issued; but

[Avery v. Seely.]

the body of the defendant is never made to accompany such return. Nor does the law of this State seem to consider this at all necessary, if we may judge from the provision of the Act of Assembly allowing mileage to him in such case, which declares that " on *testatum* writs and process, no mileage, but for that actually travelled by the sheriff, but to be allowed for *transmission* of such writs at the common *rates of postage.*" Thus showing, as I apprehend, that such writs, with the returns thereon made by the sheriff, may be transmitted, by means of the mail, to the Judges of the proper court. Neither is the return of a *capias ad satisfaciendum* necessary, in order to render the execution of it valid. For the sheriff, without having made a return of it, may even justify an arrest, made under it, in an action of trespass brought against him for having done so, by the party arrested. *Cheasley* v. *Barnes,* (10 *East* 73); *Rowland* v. *Veale,* (*Cowp.* 20); *Hoe's Case,* (5 *Co.* 90); *Doiley* v. *Jolliffe,* (*Lane* 52). But I take it, notwithstanding the sheriff of Erie had, by virtue of the writ directed to him and put into his hands, full power to arrest Charles W. Seely, yet he had no authority, under it, to carry Seely to and confine him in the jail of Luzerne county, from the court of which the writ issued. I am inclined to believe, it would have been considered, in law, an escape suffered by him if he had done so. For the power of a sheriff does not extend beyond his county, and he shall only be adjudged a sheriff and officer within his county, and not elsewhere, (*Plowd.* 37), unless it be on a writ of *habeas corpus,* where he has power, by virtue thereof, to carry the prisoner through other counties, if requisite, in order to take him to the place mentioned in the writ; or in case of an escape, he may, on fresh pursuit, retake the prisoner in another county. *Watson's Sheriff* 60. But if he, under a writ directed to him, make an arrest out of his county, he is a trespasser, and the arrest is void. *Id.* 60, 61; *Hammond* v. *Taylor,* (3 *Barn. & Ald.* 408). If, however, he makes the arrest in his own county, under a *testatum capias ad satisfaciendum* directed to him for that purpose, it is his duty to confine the defendant in the jail of his own county, where he may keep the jail himself, or appoint whom he pleases for that purpose, and not in the jail of the county from the court of which the writ issued, where he has no power or control whatever. The sheriff making the arrest, in such case, must be considered responsible for the safe keeping of the prisoner, as a pledge for the plaintiff's debt; but it would be singular and unreasonable, that he should be made liable for an escape of the debtor from his confinement, suffered by the jailer of another county, where he has not the appointment of such jailer, or any control over him. So on the other hand, it would be equally unreasonable to make the sheriff of the county, whence the writ issued, liable, at all hazards, for the safe keeping of the party arrested, when he has no fees or compensation allowed to him, as is the case, for such risk. No

[Avery v. Seely.]

provision is made by law, authorizing the sheriff in such case, who has made the arrest, to deliver the party arrested over to the sheriff or the jailer of the county from which the writ issued. The responsibility of the sheriff making the arrest is very great under final process, such as the *capias ad satisfaciendum* in this case; for he is liable to the plaintiff for the amount of his debt, even if the defendant be rescued by a force that he cannot resist at the time. *May* v. *Proby*, (*Cro. Jac.* 419); *Dalt. Sheriff* 535; *Watson's Sheriff* 74. The reason of this strict and severe accountability of the sheriff is, because under the statute of Westminster 2, he is bound to raise the *posse comitatus*, and may by this means prevent the rescue. But how far has he authority to call upon the *posse comitatus* to accompany and assist him in the execution of the writ? Certainly not beyond the limits of the county where the arrest has been made; and much less through half a dozen counties to the jail of one in the extreme end of the State. Then what is to become of the sheriff, under such a weight of responsibility, if he cannot take with him the *posse comitatus* out of his own county? It is plain he may be ruined without the power or possibility of saving himself; and hence it cannot be, that it is his duty to go beyond the limits of that protection which the law has provided for him. And, indeed, it would be grievous, as also onerous, upon the citizens of the county in which the arrest is made in such case, if they were bound, at the call of the sheriff, to accompany him to the most remote corner of the State from their residence, without any compensation or allowance being made for it; yet certain it is, that they are obliged by law to attend him, when required, without any reward being prescribed for their doing so. *Watson's Sheriff* 60. It would, therefore, be unjust to require either the sheriff or the citizens of his county, to go with the prisoner or defendant, in the *testatum* execution, to any other jail than that of their own county. And in accordance with the principles here advanced, it was held in *Boothman* v. *The Earl of Surry*, (2 *Term Rep.* 5), that the bailiff of a liberty, who had the return and execution of writs within his liberty, was liable to an action of debt for an escape, for having removed a prisoner, taken by him in execution, to the county jail situate out of his liberty, where he delivered him into the custody of the sheriff, instead of taking him to and confining him in his own jail. Now, if there be any difference, in principle, between the bailiff of a liberty and the sheriff of a county to whom a *testatum capias ad satisfaciendum* is directed, it is in favour of the bailiff; for the writ is not directed to him, but to the sheriff of the county in which the liberty is situate, and he acts under a mandate from the sheriff of such county.

Having shown that the jail of Erie county was the place to which the sheriff ought to have committed Seely, upon his arresting him, had he not been discharged from his custody by the order of a Judge of the Court of Common Pleas of that county, it remains

[Avery v. Seely.]

for us to inquire and ascertain, whether the Court of Common Pleas of Erie county is not the proper court to which the petition for the benefit of the insolvent laws ought to have been presented by Seely, and whether that may not be construed to be the same court mentioned in the condition of the bond. A reference to the Act of Assembly of the 16th of June 1836, entitled " An Act relating to insolvent debtors," will settle the first of these questions. By the first section it is declared, that " the several Courts of Common Pleas of this commonwealth shall have power to grant relief to insolvent debtors residing or being within this commonwealth." The first clause of the second section then declares, that " in the case of a person *arrested* or *detained* by virtue of *any process* issued in any civil suit or proceeding, for the recovery of money or damages, or for nonperformance of any decree or sentence for the payment of money, without collusion with the plaintiff, *the Court of Common Pleas of the county in which such debtor shall be arrested* or *detained*, shall have power to grant relief, as aforesaid." Now it is too plain to admit of a doubt, that it is the Court of Common Pleas of the county in which the debtor is arrested or detained, that is authorized by this Act to grant relief to him. Erie county, therefore, being the county in which Seely, the debtor in this case, was arrested and detained, the Court of Common Pleas of that county alone was authorized to grant the relief provided by the Act. The fourth section makes it lawful for *any Judge* of the Court of Common Pleas *aforesaid*, that is, of the county where the debtor is arrested or detained, or the prothonotary of such court, to make an *order* for *his discharge*, on his giving bond to the plaintiff in such suit or proceeding, in such amount, and with such security as shall be approved by such Judge or prothonotary; and the sixth section prescribes the form of the condition of the bond; which is, " that the said debtor shall appear at the next term of the Court of Common Pleas of the *said county*," &c.; meaning clearly the county in which he has been arrested or is detained. Everything, then, towards procuring relief for the debtor, is to be done in the county where he is arrested or detained, either by an application to a Judge of the Court of Common Pleas of that county or the prothonotary thereof, or the court itself, accordingly as the nature of the act sought to be done shall require. Therefore everything necessary to be done in the present case, in order to obtain the benefit of the Act, was to be done in Erie county; and after obtaining an order of discharge from the arrest, the application for the benefit of the Act was to be made by the debtor, by presenting his petition to the Court of Common Pleas of that county.

Then comes the next question, may the county mentioned in the condition of the bond here, be so construed as to mean *Erie* county, so that Seely shall be required thereby to appear at the next term of the Court of Common Pleas of that county, and present his

[Avery v. Seely.]

petition to the Judges thereof for the benefit of the insolvent laws? If it cannot, then the condition of the bond is void, because it is not in conformity to the requirement of the Act, and consequently no recovery can be had upon it by the plaintiff. *Hutton* v. *Helme,* (5 *Watts* 346). But if Seely, the debtor, had failed to appear at the next term of the Common Pleas of Erie county, and present his petition for the benefit of the insolvent laws, it appears to me that the phrase " said county," in the condition of the bond, might, by construction, have been considered as having a reference to the county mentioned in the obligatory part, which is Erie county, in order to render the bond available agreeably to the intent of the parties. For, I take it, that whenever anything contained in a written instrument is susceptible of different meanings, that shall be taken which will support the instrument, and not the other, which would defeat it. *Wyat* v. *Aland,* (*Salk.* 324). The bond and the condition are to be regarded as constituent parts of the same instrument, and the expression, " said county," used in the condition, does not necessarily mean the county *last* aforesaid, but means the county before *spoken* of in the same instrument, and, where two are previously mentioned, may be referred to that which tends to support the instrument, rather than the other, which would go to avoid it.

                                     Judgment affirmed.